UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TYRA DANYAL CASTILLO,<br><br>  Petitioner,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>  Respondent. | Case No.  4:19-cv-00449-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.  INTRODUCTION

Pending before the Court is Petitioner Tyra Danyal Castillo's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. 1)[1], *United States v. Castillo*, 4:18-cr-00068-DCN, (Dkt. 44), and Castillo's Motion to Admit Evidence (Dkt. 8). For the reasons explained below, the Court will GRANT Castillo's Motion to Vacate and Deny Castillo's Motion to Admit Evidence as MOOT.

## II.  BACKGROUND

### A.  Procedural Background

In November 2018, Castillo pled guilty to one count of Possession with Intent to Distribute Methamphetamine. The Court sentenced Castillo to 137 months imprisonment, followed by 3 years supervised release. Castillo subsequently filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging she asked her criminal

---

[1] Unless otherwise referenced, all docket citations are to the instant civil case, *Castillo v. United States*, 4:19-cv-00449-DCN.

defense attorney to appeal her sentence, but that he failed to do so. The Court ordered an evidentiary hearing which, after a lengthy continuance due to the COVID-19 pandemic, was held on July 8, 2020.[2] Dkt. 7; Dkt. 9; Dkt. 11.

### B. Testimony during Evidentiary Hearing[3]

Castillo testified that immediately after her sentencing, she was quite upset and lamented to her attorney, Manual Murdoch, "what would we file an appeal on?" Murdoch didn't answer her question, but Castillo later clarified that it was more of a rhetorical question because, at the time, she was shaken and just thinking out loud, rather than asking Murdoch to file an appeal. Castillo confirmed that she did not ask Murdoch to file an appeal the day of her sentencing. However, two days later, Castillo alleges she left a message asking Murdoch to call her back. When Murdoch did not return her call, Castillo left another message asking Murdoch to call her back because she would like to file an appeal. Murdoch did not return her second call, so Castillo spoke with her friend, Shandy Crossley, and asked Crossley to get in touch with Murdoch to ask him to file an appeal.

Crossley testified that she left a message for Murdoch and asked him to please reach

---

[2] The evidentiary hearing was initially scheduled to occur on March 16, 2020. Dkt. 7. Three days before the hearing, Castillo's counsel filed a Motion to Admit Evidence, seeking to either admit a letter from Castillo's friend, Shandy Crossley, into evidence, or to allow Crossley to testify via video conference during the hearing. Dkt. 8. The Court vacated the March 16, 2020 hearing due to attorney illness and because it needed more information about Crossley. Dkt. 9. One day later, due to the COVID-19 pandemic, the Court issued General Order 360 closing all of Idaho's federal courthouses to the public and postponing all civil hearings until further notice. The hearing was ultimately rescheduled for July 8, 2020, and the Court permitted Crossley to testify via video during the hearing. Castillo's Motion to Admit Evidence is accordingly MOOT and therefore DENIED.

[3] The official transcript from the evidentiary hearing has not been ordered by the parties, but the Court has relied upon contemporaneous notes it took during the hearing and the unofficial hearing transcript to verify the testimony detailed below.

out to Castillo. When Castillo advised Crossley that she had still not heard from Murdoch, Crossley called Murdoch again and he answered his phone. Crossley attested she told Murdoch that Castillo wanted to file an appeal. However, Murdoch advised Crossley that he could not file an appeal because Castillo had signed a plea agreement waiving her appeal rights.

When Crossley told Castillo what Murdoch had said, Castillo testified that she left Murdoch a third message, again asking him to file an appeal. Castillo attested that she left her third message within seven days of her sentencing. In her third message, Castillo again stated she wanted to file an appeal, and briefly summarized the grounds on which she believed she could appeal. Although Castillo asked him to for a third time to call her back, Castillo testified that Murdoch failed to return her call. Castillo testified that all of her calls to Murdoch were through the Telmate system in the Madison County Jail, where she was housed at the time. Murdoch never filed an appeal. *See generally* Docket 4:18-cr-00068-DCN-1.

Crossley also testified during the evidentiary hearing. Crossley attested that she left Murdoch a message within days of Castillo's sentencing, asking him to please reach out to Castillo. When Castillo advised Crossley that she still had not heard from Murdoch, Crossley testified that she called Murdoch again and spoke to him. Through her testimony, Crossley verified that she told Murdoch that Castillo wanted to file an appeal, but Murdoch responded that Castillo was not eligible for an appeal because she took a plea deal. Crossley testified that she believed she spoke with Murdoch within three days of Castillo's sentencing. When Crossley told Castillo what Murdoch had said, Crossley testified that

MEMORANDUM DECISION AND ORDER - 3

Castillo told Crossley she would continue to try to get ahold of Murdoch about filing an appeal.

Murdoch testified that he had no recollection of Castillo ever asking him to file an appeal. However, Murdoch stated that it is his practice to always file an appeal if a client asks him to, even in cases where, as here, his clients have filed a Rule 11 plea agreement waiving their appeal rights. Murdoch testified that he would have filed an appeal if Castillo asked him to, but that he had no memory of her doing so. Murdoch also testified that he would have called Castillo to talk about an appeal if she had left a message asking him to, but that he could not recall her leaving him any messages. Even if he was unable to reach her to talk about an appeal, Murdoch confirmed that he would have filed a notice of appeal if Castillo left a message asking him to do so. Yet, although he stated it was his practice to always file a notice of appeal if a client asked him to, even if he believed the appeal was barred by the client's plea agreement, Murdoch could not recall ever having filed a notice of appeal in a case where his client had waived his/her appeal rights.

Murdoch also testified that he did not recognize the name "Shandy Crossley," and had no memory of *ever* speaking to Crossley, let alone of talking to Crossley specifically about Castillo's desire to file an appeal. However, Murdoch clarified that if a friend or family member called him on his client's behalf and asked him to file an appeal, he would not file an appeal without first talking to his client because an appeal could potentially have serious ramifications, such as constituting a breach of the client's plea agreement.

Following Murdoch's testimony, the Government asked the Court to continue the evidentiary hearing to allow limited additional discovery. Specifically, the Government

requested a brief continuance so it could obtain the Telmate records from the Madison County Jail in order to determine whether Castillo had called Murdoch's office. The Government stated it would concede that Castillo had asked Murdoch to file an appeal if it located Telmate records showing Castillo had called Murdoch's office in the days following her sentencing.

Castillo's counsel objected to the request, arguing the Government could have obtained any Telmate records long before the hearing since Castillo alleged in her § 2255 motion that she contacted her attorney a few days after sentencing to ask him to file an appeal on her behalf. *See* Dkt. 1. The Court advised Castillo's counsel that it would grant Castillo's § 2255 motion unless there was a tape recording of Castillo's messages to Murdoch showing that she did not mention an appeal. Castillo's counsel withdrew his objection and the Court gave the Government two days to obtain the Telmate records and report back.

Two days later, the Government informally advised the Court that the Madison County Jail does not make audio recordings of attorney client phone calls. However, Lieutenant Willmore of the Madison County Sheriff's Department ran a report for all Telmate calls between Castillo and Murdoch between July 2018 and April 2019. That log showed there were no phone calls in the Telmate system from Castillo to Murdoch's office phone number on or between the date of Castillo's sentencing and the thirty days following her sentencing.

### III.   FINDINGS OF FACT

Based on the evidence presented at the hearing, the Court enters the following

MEMORANDUM DECISION AND ORDER - 5

findings of fact:

Immediately after her sentencing, Castillo expressed at least a potential interest in appealing by rhetorically asking Murdoch "what would we appeal on?" During the two weeks following her February 25, 2019 sentencing, Castillo attempted to contact Murdoch on several occasions. On at least two occasions, Castillo left Murdoch messages stating she would like him to file an appeal. Crossley confirmed that Castillo had told her she had left messages for Murdoch. Crossley also left a message asking Murdoch to reach out to Castillo and later spoke to Murdoch herself and advised him of Castillo's desire to appeal. While Murdoch credibly testified that he did not recall receiving any messages from Castillo or Crossley, or speaking to Crossley, he could not conclusively confirm that Castillo and Crossley did not leave him messages, or that he had not spoken with Crossley. Further, while Murdoch testified that it is his practice to always file a notice of appeal when a client asks him to, he could not recall whether or not he had ever filed a notice of appeal in a case where, as here, his client had signed an appeal waiver.

With respect to the Madison County Jail call log, the Court finds the Government could have sought such discovery long before the evidentiary hearing. Castillo filed her § 2255 motion on November 19, 2019. The Court initially set an evidentiary hearing for March 16, 2020. Dkt. 7. The hearing was continued due to attorney illness, and, given the COVID-19 pandemic, could not occur until nearly four months later, on July 8, 2020. The Government thus had approximately eight months before the evidentiary hearing to secure the Madison County Jail phone records but did not do so. As a result, Castillo did not have

the opportunity to offer testimony regarding the specific phone number she dialed, and her counsel could not cross-examine Lt. Willmore regarding the details of the phone log.

Further, even if the Government had timely presented the phone log, the Court finds it is not dispositive of whether Castillo advised her attorney to file an appeal. Castillo could have called Murdoch on a different number than the one Lt. Willmore searched for. The phone log only shows that Castillo did not call a particular number for Murdoch during the requisite time frame.

The issue remaining before the Court is a narrow one: was Murdoch ineffective if Castillo asked him to file an appeal—both by voicemail and through Crossley—but Murdoch did not receive the messages?

### IV. LEGAL STANDARD

**1. 28 U.S.C. § 2255**

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing § 2255 Proceedings provides that a federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." "Under this standard, a district court may summarily dismiss a § 2255 motion

only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *United States v. Withers*, 638 F.3d 1055, 1062–63 (9th Cir. 2011) (citation omitted).

If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Rule 4(b) of the Rules Governing § 2255 Proceedings. The Court may dismiss a § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings, incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the Court does not dismiss the proceeding, the Court then determines whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazier v. United States*, 18 F.3d 778, 781 (9th Cir. 1994). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *Withers*, 638 F.3d at 1062. Here, pursuant to *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), *United States v. Sandoval-Lopez*, 409 F.3d 1192 (9th Cir. 2005) and *Garza v. Idaho*, 139 S. Ct. 738 (2019), the Court held an evidentiary hearing to determine whether or not Castillo told Murdoch to appeal or reasonably demonstrated to Murdoch that she was interested in appealing.

### 2. Ineffective Assistance of Counsel

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). There is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Id*. at 689. However, an attorney's failure to file a notice of appeal despite a defendant's specific instructions to do so constitutes deficient performance, and the lost chance to appeal constitutes prejudice, regardless of whether the appeal would have been successful. *Sandoval–Lopez*, 409 F.3d at 1196–98; *see also Peguero v. United States*, 526 U.S. 23, 28 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit."). Failure to file an appeal specifically requested by a defendant constitutes deficient performance because a defendant "who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Flores-Ortega*, 528 U.S. at 477. At the other end of the spectrum, "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id*. (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

Where a defendant neither instructs counsel to file an appeal, nor asks that an appeal not be taken, the court must consider whether counsel in fact consulted with the defendant about an appeal. The Supreme Court employs the term "consult" to convey "a specific

MEMORANDUM DECISION AND ORDER - 9

meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discovery the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. If counsel has consulted with the defendant, counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. *Id*. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. *Id*.

Although it noted that it is the better practice for counsel to always consult with a defendant about the possibility of an appeal, the Supreme Court rejected the contention that counsel's failure to consult with the defendant is always constitutionally deficient representation. *Id*. at 479. Instead, counsel has a constitutionally imposed duty to consult with the defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*.

In deciding whether counsel has a constitutionally imposed duty to consult with a client regarding an appeal, courts must take into account all of the information counsel knew or *should have known*. *Id*. at 480. The court must consider factors such as whether the sentence followed a guilty plea—indicating the defendant no longer wished to pursue judicial proceedings—as well as "whether the defendant received the sentence bargained for as a part of the plea[.]" *Id*. A court may properly determine whether a particular defendant sufficiently demonstrated to counsel an interest in an appeal "only by

MEMORANDUM DECISION AND ORDER - 10

considering all relevant factors." *Id*. However, "in the vast majority of cases," it is expected that court's evaluating the reasonableness of counsel's performance will find "that counsel had a duty to consult with the defendant about an appeal." *Id*. at 481.

## V. ANALYSIS

Here, the Court finds that Castillo expressly told Murdoch to file an appeal. Castillo testified that she told Murdoch twice in voicemails that she wanted him to file an appeal, and Murdoch could not conclusively refute this contention. However, even if Castillo did not explicitly tell Murdoch to file an appeal in her messages, or if Murdoch missed such messages, the Court also finds Castillo reasonably demonstrated to Murdoch that she was interested in filing an appeal, triggering Murdoch's duty to consult.

In this case, the first element of *Flores-Ortega* is not at issue. That is, the Court need not address whether a rational defendant would want to appeal because Castillo specifically waived her right to appeal (except for under very limited grounds not applicable here) in her plea agreement.[4] 4:18-cr-00068-DCN, Dkt. 20, at 10. Castillo also received a below-guidelines sentence. Under such circumstances, Murdoch could reasonably conclude that a rational defendant in Castillo's position would not want to appeal the sentence. The issue is thus whether Castillo reasonably demonstrated to Murdoch that she was interested in appealing. If she did, the Court must also consider whether there is a reasonable probability that, but for Murdoch's failure to consult with her about an appeal, Castillo would have timely appealed. *Id*. at 484. If Murdoch's conduct deprived Castillo of an appeal that she

---

[4] Notwithstanding the appeal waiver, the plea agreement retained Castillo's right to file a 28 U.S.C. § 2255 motion alleging ineffective assistance of counsel. *Id*.

MEMORANDUM DECISION AND ORDER - 11

would have otherwise taken, then Castillo has made out a successful ineffective assistance of counsel claim entitling her to an appeal, regardless of the merits of her underlying appeal. *Id*.

The Court finds it credible that Castillo attempted to communicate to Murdoch—both through voicemails and through Crossley—that she was interested in appealing her sentence. However, it appears that Murdoch either did not receive Castillo's messages or could not file an appeal based on his call with Crossley without first talking to Castillo. The question then is whether Castillo reasonably demonstrated her interest in appealing. On the one hand, *Strickland* requires that counsel's performance be measured with deference. Can counsel be held responsible for a request he did not know had been made? On the other hand, where counsel represents a client who has recently been sentenced to over ten years, and who verbalized at least a *potential* interest in appealing within minutes of sentencing and again through multiple messages and a friend's phone call, is counsel duty-bound to make certain that he follows up with his client before the appeal period expires? Here, a number of facts persuade the Court both that Castillo reasonably demonstrated her interest in appealing, triggering a duty to further consult with Castillo regarding her desire to appeal, and that she would have appealed absent Murdoch's failure to return her phone calls. *Id*. at 478.

First, the Court credits Murdoch's statement that he does not remember Castillo leaving any messages requesting that he file an appeal. However, Murdoch could not deny that Castillo left messages and did not testify about whether or not he generally receives all client messages. Given that Murdoch could not entirely dispute the possibility that

MEMORANDUM DECISION AND ORDER - 12

Castillo left messages requesting an appeal, the Court gives deference to Castillo's version of what occurred.

Second, Murdoch testified that he spoke to several of Castillo's family and friends prior to sentencing, but could not recall the name "Shandy Crossley," and did not recall speaking to Crossley after Castillo's sentencing. However, Crossley testified credibly that she spoke to Murdoch and told him Castillo was interested in filing an appeal. Crossley also testified that Murdoch advised her that Castillo could not file an appeal because she had signed an appeal waiver in her plea agreement. Crossley's specific recall of information Murdoch purportedly told her lends weight to both Castillo's claim that she attempted to communicate her desire to appeal to Murdoch through Crossley, and to Crossley's allegation that she informed Murdoch, on Castillo's behalf, that Castillo was interested in appealing. Although the Court does not find that Murdoch was required to file an appeal simply because of his conversation with Crossley, the phone call should have at least alerted Murdoch that he should contact Castillo to further discuss her desire to file an appeal.

Third, the Court finds the timing of Castillo's communications regarding her interest in filing an appeal to be significant. At the evidentiary hearing on this matter, Castillo testified that she verbally lamented to Murdoch, "what would we file an appeal on," within minutes of her sentencing. Although Castillo also confirmed during hearing that such statement was not a request that Murdoch file an appeal but was instead her simply thinking out loud after being shaken up by her long sentence, this statement should have amplified Murdoch's attention to Castillo following sentencing. That Castillo left voice messages for

MEMORANDUM DECISION AND ORDER - 13

Murdoch three times shortly after this statement, and also had Crossley contact Murdoch twice within her appeal period, further supports the Court's conclusion that Castillo reasonably demonstrated to Murdoch that she wanted to file an appeal, triggering Murdoch's duty to consult.

Under *Flores-Ortega*, the Court must consider that Castillo pled guilty, signed an appeal waiver, and received a below-guidelines sentence, but it must also look at the totality of what counsel knew or should have known. That Castillo immediately questioned whether there were grounds for an appeal following sentencing should have alerted Murdoch to his client's interest in pursuing an appeal. Castillo's three voice messages asking him to call her back (two of which specifically stated she wanted to file an appeal), Crossley's message asking him to call Castillo, and Crossley's phone call with Murdoch informing him that Castillo wanted to file an appeal, each weigh in favor of the Court's finding that Castillo reasonably demonstrated her interest in pursuing an appeal. Murdoch thus had a constitutionally imposed duty to consult with Castillo about an appeal. *Id*. at 480. Because he failed to do so, and because of her repeated messages and attempts to reach Murdoch to file an appeal—both on her own and through a third party—the Court is satisfied that Castillo would have appealed absent such failure. Castillo has met her burden of establishing ineffective assistance of counsel.

## VI. ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. Petitioner's Motion to Take Additional Evidence (Dkt. 8) is MOOT and therefore DENIED;

2. Petitioner's Motion under 28 U.S.C. § 2255 (Dkt. 1) in this case and (Dkt. 44) in Castillo's criminal case, 4:18-cr-00068-DCN, is **GRANTED**;

3. The Court will vacate the judgment (Dkt. 37) filed in Castillo's criminal case, 4:18-cr-00068-DCN, on February 25, 2019, and will re-enter the exact same judgment as a new judgment;

4. Petitioner's § 2255 counsel, Richard Hearn, shall file a notice of appeal in the criminal case, 4:18-cr-00068-DCN, within fourteen (14) days of the entry of the new judgment;

5. Upon filing the notice of appeal, Hearn shall confirm with the Court that the notice of appeal has been filed and shall also advise the Court as to whether he will represent Castillo in her direct appeal;

6. If Hearn advises the Court that he will not represent Castillo in her direct appeal, the Court will appoint Castillo new counsel.

DATED: September 17, 2020

_____
David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 15